KILGUS *v.* HOOD.

JOINT ADVENTURES—TERMINATION OF RELATION—ACCOUNTING—EVIDENCE—OIL WELLS.

In suit by plaintiff to obtain accounting by individual defendants for profits from oil wells and to establish a trust with regard to certain properties on ground that the profits and properties resulted from a joint venture, evidence *held,* to support trial court's determination that the relation of a joint venture had been terminated prior to activity out of which claimed funds and properties arose.

Appeal from Allegan; Miles (Fred T.), J. Submitted June 16, 1939. (Docket No. 55, Calendar No. 40,465.) Decided September 6, 1939. Rehearing denied November 9, 1939.

Bill by Carl A. Kilgus against Sim B. Hood, John W. Hurley, Harry R. Allen, Hood Oil Company, a Michigan corporation, and others for an accounting, an injunction and other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Monaghan, Crowley, Clark & Kellogg (Edward T. Kelley,* of counsel), for plaintiff.

*Walter M. Nelson* and *Leo W. Hoffman,* for defendants Hood, Hurley, Allen, and Hood Oil & Gas Corporation.

McALLISTER, J. Plaintiff brought suit in equity against defendants Sim B. Hood, John Hurley and the Hood Oil Company for an accounting of profits from oil wells and to establish a trust with regard to certain oil properties owned by defendants, on the

claim that the said funds and properties resulted from a joint venture undertaken by plaintiff and defendants, Hood and Hurley. Other defendants than those above named are made parties herein for the purpose of enjoining payment of alleged profits to the chief defendants. On a trial on the merits, the circuit court entered a decree dismissing the bill of complaint, from which plaintiff appeals.

Carl A. Kilgus for several years prior to this suit had been engaged in the business of exploiting oil lands. In 1935 he had certain oil leases in St. Clair county and needed money for drilling purposes. With this objective, he consulted John Hurley, an attorney in Detroit, who had previously advised him in other matters. Hurley introduced plaintiff to Hood, and they succeeded in raising money for plaintiff's operations. Corporations were formed in which each of the parties received an equal share of stock, selling the balance to other stockholders in order to finance the business. Three separate operations appear to have been carried on in this way, for which three different corporations were formed. In these ventures, Kilgus supervised the drilling operations, Hurley handled the legal work and bookkeeping and Hood had charge of the finances. The parties further appear to have engaged in a Canadian oil operation and also to have purchased a right in an oil lease in Gladwin county. All of the foregoing seems to have been undertaken as a joint venture.

On June 2, 1937, Harry Allen, who had met the parties to this suit in 1935, wrote a letter to Kilgus from Allegan county, stating that he had a chance to secure some leases there, and that if Kilgus could get an old machine for him, he would see what could be "lined up." Kilgus referred the letter to Hurley and Hood with the result that after some discussion,

Hood and Kilgus went to Allegan county on June 14th and there met Allen. Thereafter, Hurley and Hood sought to interest other stockholders in the various oil operations in the Allegan field. Allen and Hood proceeded to interview farmers and secured certain lease rights; and Hurley and Hood, after going over the entire situation, came to the conclusion that in spite of all of their previous unsuccessful operations, Allegan county was the best locality in which to drill for oil. About this time, however, Kilgus became especially interested in the oil field in Gladwin county, and opposed Hood and Hurley in their efforts to enlist the support of the other stockholders in the Allegan field, contending that they should put all of their resources into the drilling of the Gladwin area.

On August 19, 1937, there occurred a meeting of all of the stockholders of the three corporations, which had been previously organized, in Mr. Hurley's office in Detroit. The purpose was to interest such stockholders in investing money in a new company for another drilling operation. At this meeting Kilgus appeared and argued strenuously for development of the field in Gladwin county. Hood and Hurley contended for drilling in Allegan. A revealing light is thrown upon the meeting, the contentions of the parties, and the result of their controversy in the following cross-examination of the plaintiff:

"*Q.* Isn't it a fact that Mr. Hood was for going into Allegan county and staying out of Buckeye entirely?

"*A.* Yes, sir.

"*Q.* And Mr. Hurley was wayward for a while between you, and then finally decided on the Allegan field as against the Buckeye, didn't he?

"*A.* That is right.

"*Q.* Mr. Hurley's position was that the people that put up the money should decide the issue?

"*A.* That is right.

"*Q.* Because they were his friends, the people that put up the money?

"*A.* I don't know whether his friends or not.

"*Q.* They were Mr. Hurley's clients and friends, all from Pyramid and Wayne Well No. 1 and Wayne Well No. 2?

"*A.* They were people that were brought in and stock was sold to friends of their friends.

"*Q.* Through Mr. Hurley?

"*A.* Yes.

"*Q.* And when he decided against Buckeye, why, the money didn't go there?

"*A.* That is right.

"*Q.* And it did come to Allegan, didn't it?

"*A.* That is right.

"*Q.* And when you found that out you wrote a letter to the officers, the board of directors and the stockholders of Wayne Well No. 1 and No. 2, and the Pyramid, didn't you?

"*A.* That is right. * * *

"*Q.* Now, you got so indignant with the policies adopted that you resigned, didn't you?

"*A.* As an officer, yes, sir.

"*Q.* And you recite in here that for some time you have been drifting from one point of disagreement to another?

"*A.* Yes, sir.

"*Q.* And that point of disagreement was whether you should go into Buckeye or into Allegan, wasn't it?

"*A.* That and Canadian matters."

The resignation above referred to consisted of three identical letters, dated August 27, 1937, addressed to the officers and boards of directors of the three corporations, and state the following:

"I, Carl A. Kilgus, of the city of Detroit, State of Michigan, do, on this 27th day of August, A. D. 1937, tender my resignation, and do, by this act, resign from my offices in the above corporation.

"It has been obvious for some time past we have been drifting from one point of disagreement to another.

"First, I tried to keep the interests of Wayne Well No. 2 together by offering interests in a lease in Buckeye Field, and met with you a number of times without success, only to find a stranger had been brought into these all too delicate circumstances for further exposure, and the National Supply Company, who had regarded our friendly business relations and had belief in my ability, became apprehensive.

"It is therefore apparent to me, that before more harm is experienced by the stockholders and myself, I resign.

"This action on my part is irrevocable, and I consider myself from this moment no longer officially related to your corporation.

"Hoping and wishing you success."

From the testimony it appears that plaintiff used all of his efforts in attempting to discourage interest in Allegan county. He stated that if they found oil there, "he would eat his shirt." Later, plaintiff sold all of his stock in the three corporations. He continued to carry on his work in Gladwin county, and appears to have had no communication with defendants until many months thereafter, when the drilling operations in Allegan proved to be successful. After learning of this fact, plaintiff made a demand for an equal share in the profits of the Allegan operations with Hood and Hurley, on the ground that it had been agreed between them at the time of their first association in business that they would share equally

in all future ventures in the exploitation of oil. Both defendants deny that there was ever any agreement of this kind.

The trial court held that the prior dealings of the parties, conceding that they could be considered as a joint venture, did not control the situation with regard to the Allegan field, and that the resignation of all offices in the companies by plaintiff and the sale of all of his stock in the various corporations constituted strong evidence that plaintiff severed his connection with any possible joint venture in August, 1937, before the Allegan drilling commenced; and that the testimony of defendants and, moreover, that of plaintiff himself, lead to such a conclusion.

Plaintiff never contributed anything in the way of money, service or supervision to the development of the oil operations in Allegan; and further, he never agreed to do so either before or after the discovery of oil in that place. He seems to have carried on an individual operation in Gladwin county without consultation or communication thereafter with defendants. Plaintiff claims, however, that he did not know that the defendants had rights in oil leases in Allegan at the time of the meeting of the stockholders. He further contends that his opposition extended only to certain parts of Allegan county which had been proved of no worth for oil development. His statements were contradicted by the defendants.

It is unnecessary to comment upon all of the various claims made by the parties and the conclusion and legal effect sought to be drawn therefrom. The testimony was largely disputed, but the final issue was purely one of fact, as to whether the plaintiff severed all connection with defendants in regard to the Allegan operation; and on a review of the record, we are of the opinion that the court's determination, that all relation of a joint venture was

terminated by the plaintiff at that time, was amply supported by the evidence. Decree affirmed, with costs to defendants.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER and NORTH, JJ., concurred.